UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIFFANY D. WHEATLEY, | ) | CASE NO.   4:21-cv-1831 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET M. BRENNAN |
| v. | ) | |
| | ) | |
| BOARDMAN LOCAL SCHOOLS, | ) | **MEMORANDUM OPINION** |
| DISTRICT BOARD OF EDUCATION, | ) | **AND ORDER** |
| *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Before this Court are the Defendants Boardman Local Schools, Boardman School Board of Education, Tim Saxton, Mark Zura, Thomas Ruggieri, Jared Cardillo, Courtney Abruzzino, Shana-Craig Yardas, Gina Crilley, and Katie Fallo's (the "District Defendants") Motion to Dismiss Plaintiff's Amended Complaint for Lack of Jurisdiction and Failure to State a Claim (Doc. No. 23) and Defendant Lynda Beichner's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 29).   Pursuant to this Court's May 12, 2022 Order, Plaintiff had until May 20, 2022 to oppose both motions to dismiss.   Plaintiff has not filed an opposition brief for either motion.   Therefore, both motions are ripe for review.   For the reasons that follow, this Court GRANTS both motions to dismiss.

## I.  Background

### A.  Procedural Background

On September 27, 2021, *pro se* Plaintiff Tiffany Wheatley initiated this action after she

received a letter from Boardman Local Schools (the "District") informing her that she was banned from traveling with her minor child, a District student, to all "[f]ootball games and band events for the duration of the 2021-2022 football season."   (Doc. No. 1 at PageID 2.)   The complaint requested that the Court grant Plaintiff an *ex-parte* temporary restraining order ("TRO") and set a date for a preliminary injunction proceeding.   (*Id.*)

On September 29, 2021, after reviewing the complaint, the Court declined to consider Plaintiff's request for an *ex parte* TRO because Plaintiff was attempting to bring claims on behalf of her daughter, which *pro se* plaintiffs are barred from doing.   (Doc. No. 3 at PageID 55.)   In this Order, the Court also set deadlines for Plaintiff to provide proof of service and for the District Defendants to oppose Plaintiff's request for a preliminary injunction.   (*Id*. at PageID 57.)

On October 14, 2021, Plaintiff filed a motion to extend the dates set in the Order denying her request for a TRO.   (Doc. No. 4.)   The Court granted this motion and gave Plaintiff additional time to file proof of service.   (Doc. No. 5 at PageID 60.)   Further, this Order reminded Plaintiff again of the rules prohibiting *pro se* plaintiffs from representing their minor children.   (*Id.*)

After the Court granted them an extension (Doc. No. 9), the District Defendants filed an opposition memorandum to Plaintiff's request for a preliminary injunction (Doc. No. 8), an answer to the complaint (Doc. No. 10), and a motion to dismiss the case (Doc. No. 11). Thereafter, Plaintiff filed a motion for additional time to amend the complaint and an extension of time to file a response to the District Defendants' motion to dismiss (Doc. No. 13), a supplement to her most recent request for an extension of time (Doc. No. 14), and a motion for leave to amend the complaint (Doc. No. 16).   In turn, the District Defendants responded to the

last of these filings, asserting that they did not oppose Plaintiff's request to file an amended complaint but asked the Court to issue an order clarifying that Plaintiff would only have one opportunity to amend the complaint and Plaintiff's further failure to comply with deadlines will result in dismissal with prejudice.  (Doc. No. 17 at PageID 201.)  Ten days after the District Defendants filed this response, before the Court had issued any ruling on Plaintiff's pending motions, Plaintiff filed her amended complaint.  (Doc. No. 19.)  This new complaint added Lynda Beichner as a named Defendant, who – unlike the other District Defendants – is not a District employee.  (*Id.*)

On March 1, 2022, less than a week after Plaintiff filed her amended complaint, this case was reassigned.  On March 2, 2022, the District Defendants filed a motion for the Court to hold a status conference.  (Doc. No. 20.)  The Court granted this motion and set a status conference for April 18, 2022.

In between the time that this case was reassigned and the status conference, Plaintiff filed a motion for "relief from Order and to correct several filing mistakes" (Doc. No. 22), a motion for leave to exceed page limitations (Doc. No. 24), and a motion "for leave to file supplemental amendment to the original complaint in further support of statutory standing" (Doc. No. 26).  The District Defendants opposed the first of these filings (Doc. No. 25), which Plaintiff replied to by filing an objection brief (Doc. No. 27).  In a non-document Order, the Court denied the motion for leave to exceed the page limitations and struck the supplemental amendment filing from the record for its failure to comply with Local Rule 7.1(f)'s page limitations.  Finally, before the status conference, both the District Defendants and Ms. Beichner filed motions to dismiss the amended complaint.  (Doc. Nos. 23 & 29.)

At the April 18, 2022 status conference, all parties agreed that the amended complaint

was the operative complaint, so the Court denied all motions regarding the first complaint as moot.  (Doc. No. 30.)   During the conference, Plaintiff raised the need to amend her complaint a second time and forecasted the need to exceed the 20-page limitation for her opposition briefs to the pending motions to dismiss.  (*Id.*)   In turn, the Court set an April 27, 2022 deadline for Plaintiff to seek leave to file a second amended complaint and to file a separate motion to exceed the page limitations for her opposition briefs, pursuant to Local Rule 7.1.  (*Id.*)

On April 27, 2022, Plaintiff did not submit these motions and instead submitted a motion to "adjust the scheduling order."  (Doc. No. 31.)   In a non-document Order, the Court granted this continuance and extended the deadlines until May 3, 2022.   Thus, Plaintiff was required to seek leave to file a second amended complaint on or before May 3, 2022.   Similarly, any request to submit opposition briefs in excess of 20 pages was also to be filed on or before May 3, 2022.

Plaintiff did not file any motion, responsive pleading, or request for continuance on or before the May 3, 2022 deadline.

On May 10, 2022, seven days after the extended deadlines had passed, Plaintiff filed a motion seeking another "continuance in this matter for three weeks."  (Doc. No. 32.)   On May 12, 2022, the Court granted in part and denied in part Plaintiff's request for a continuance. Because the deadlines for submitting motions for leave to file a second amended complaint or authorization to exceed the requisite page limits had passed, the Court denied Plaintiff's motion to the extent it sought to establish another deadline for such submissions.   (Doc. No. 33.)   The Court did, however, extend the deadline for responding to the District Defendants' second motion to dismiss and Ms. Beichner's motion to dismiss until May 20, 2022.   (*Id.* at PageID 406.)

On May 21, 2022, one day after an unrelated deadline had passed and 18 days after the applicable deadline had passed, Plaintiff filed a second motion to amend the complaint (Doc. No. 34), a second motion for leave to exceed page limitations (Doc. No. 35), and a supplement to the second motion to amend the complaint (Doc. No. 36).   The Court denied these motions.   (Doc. No. 37.)   Plaintiff did not file – by May 20 or on May 21 – any opposition to the motions to dismiss.

### B. Factual Allegations and Causes of Action

In essence, Plaintiff's 31-page amended complaint details her and her daughter's interactions with various District employees over the the more than six years that her daughter was a District student.   Many of these allegations are not relevant to the causes of action that Plaintiff lists at the end of her complaint.   What follows, therefore, is a high-level overview of the complaint with more detailed descriptions of the factual allegations that relate to this dispute.

In the first section of the amended complaint, Plaintiff provides background on Boardman Township ("Boardman") and the District.   (Doc. No. 19 at PageID 208-15.) Specifically, Plaintiff alleges that Boardman's leadership excludes minorities from participating in local governing bodies.   (*Id.*)   To Plaintiff, minority candidates are particularly excluded from the District's various leadership positions.   (*Id.*)   Plaintiff alleges that this discrimination has created a hostile environment for the District's minority students and parents.   (*Id.*) Specifically, Plaintiff claims similarly situated minority parents are repeatedly ignored when they seek redress from the white District students and teachers' racist actions and attitudes.   (*Id.*)

In the next section, Plaintiff provides an extensive description of the District's alleged mistreatment of her and her daughter throughout her daughter's time as a District student.   (*Id.* at PageID 215-29.)   Plaintiff asserts that problems began between her and the District through

Plaintiff's participation in PTA, where she attempted to ameliorate what she perceived to be dangerous conditions in the schools.  (*Id.*)  Around this time, the District disciplined Plaintiff's daughter, which Plaintiff alleges was racially motivated.  (*Id.*)  Towards the end of this section, Plaintiff asserts that this targeting of her and her daughter has mainly come from her daughter's band teacher, who has unfairly graded and disciplined her daughter.  (*Id.* at PageID 225-30.)

In the final section – titled "The Issues at Hand" – Plaintiff details events that occurred during her daughter's senior year of high school.   The relevant allegations appear to revolve around her daughter's participation in the school band – namely the band's danceline team.

Plaintiff alleges that the band director and other District employees unfairly disciplined her daughter after she missed band practice to participate in cross-country team events.  (*Id.* at PageID 230-31.)  Although the complaint indicates that the issue was resolved after Plaintiff agreed to notify the band director whenever her daughter would miss practice due to cross-country team events, Plaintiff asserts that the District only enforced this rule because of her daughter's race.  (*Id.* at PageID 230.)

Second, Plaintiff alleges that her daughter was bullied during her participation in the band's danceline.  (*Id.* at PageID 231-33.)  Specifically, Plaintiff writes that "[t]he parents['] coordinator for the danceline, Mrs. Lynda Beichner[,] also began inserting herself by various intimidations tactics, such as having her daughter drive the ba[n]d director's truck through car washes."  (*Id.* at PageID 231.)  Furthermore, Plaintiff asserts that the danceline members intimidated her daughter by circling her and engaging in play-fighting amongst themselves using their batons.  (*Id.* at PageID 231-32.)  Plaintiff also alleges that her daughter was forced to apologize to Ms. Beichner's daughter after she was falsely accused of calling her a derogatory name.  (*Id.* at PageID 233.)

Third, Plaintiff asserts that her daughter was dropped on at least two occasions during danceline practice, which she seems to attribute to improper instruction. (*Id.* at PageID 232, 234.)

Fourth, Plaintiff alleges that the band director again unfairly punished her daughter after missing band practice because of a COVID-19 induced quarantine. (*Id.* at PageID 233.) Ultimately, her daughter was required to meet with her school's principal and assistant principal. (*Id.* at PageID 234.) The school also referred the daughter to a truancy officer. (*Id.*)

Fifth, Plaintiff makes a passing reference to the fact that she was banned from attending band events after she was overheard calling her daughter derogatory names, which Plaintiff denies. (*Id.*)

This section of the amended complaint concludes with Plaintiff's contentions that the District has not addressed any of her complaints about the racism, bullying, and unsafe conditions her daughter has endured during band and danceline participation. (*Id.*) Specifically, Plaintiff alludes to a letter she received from the District addressing her contentions:

> The district states in their letter that they refused to engage in culturally insensitive conversation[.] The school, however, regularly engages in cultural insensitivities. Including posting pictures of band students engaged on school trips shopping for confederate flags. Allowing students to fly confederate banners from their cars while on property and [p]arents signifying white supremacist allegiances in hand signals during school events.

(*Id.* at PageID 235.)

The final paragraph of this section lists the causes of action:

> This results in [c]reating a terroristic environment, a denial of fape, breach of contract, breach of trust, breach of due process, violations of the 1983 rehabilitation [act], the civil rights title vi act[,] and just about every other constitutional thing you can think of.
> This also includes violation of the 14th amendment and Ferpa.

(*Id.*)

In the "Prayer Relief" section, Plaintiff explains:

I am asking for relief in the amount of 22 million usd for the district attempting to undermine 17 years of my hard work to make my daughter a competent adult, for the fallout of her injuries and her recovery, which I have to facilitate, which includes psychotherapy and further medical care as well[] as the loss of all opportunities that she had well-established and are now eluding her due to these matters.  I am also seeking relief due to the loss of filial consortium, loss of joy, and intentional infliction of emotional distress, as the district is well aware that we are poor, I am bipolar, I am a single mother of multiple children, and that these issues would be insurmountable for me.

(*Id.* at PageID 236.)

## II.  <u>Analysis</u>

### A.  Standard of Review

#### i.  Failure to State a Claim

When addressing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (setting forth the standard of review for a motion to dismiss); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).   Although this standard is a liberal one, a complaint must still provide the defendant with "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Facial plausibility means that the complaint contains "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Such plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* "'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 566 U.S. at 678.

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 566 U.S. at 678 (This standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "Bare assertions," basic recitations of the elements of the cause of action, or "conclusory" allegations are not entitled to the assumption of truth and, without more, do not satisfy the Rule 8 notice standard. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

When a court is presented with a Rule 12(b)(6) motion, it may only consider material related to the pleadings. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Documents are considered related to the pleadings only if they are attached to either the complaint or the defendant's motion to dismiss, referred to in the complaint, and central to the plaintiff's claims. *Id.* If the court decides to evaluate material outside of the pleadings, the motion to dismiss must be converted to a motion for summary judgment. *Wysocki v. Int'l Bus.*

*Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).   However, a court has complete discretion to determine "whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion."   *Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) (citation omitted).

### ii.  *Pro Se* Plaintiffs

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, the Court is not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff.   *See Bassett*, 528 F.3d at 437.   The complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests.   *Lillard v. Shelby Cty. Bd. of Edn.*, 76 F.3d 716, 724 (6th Cir. 1996) (citation omitted).

The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true.   *Twombly*, 550 U.S. at 555.   The plaintiff is not required to include detailed factual allegations, but he or she must provide more than "an unadorned, the defendant unlawfully harmed me accusation."   *Iqbal*, 556 U.S. at 678.   A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard.   *Id.*   The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."   *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### iii.  Standing and Subject Matter Jurisdiction

When a party seeks to dismiss a claim because the plaintiff lacks standing, courts do not apply the federal pleading standard outlined in *Twombly* and *Iqbal*.   Instead, courts apply the Fed. R. Civ. P. 12(b)(1) standard for lack of subject matter jurisdiction.   *Am. BioCare Inc. v.*

*Howard & Howard Att'ys Pllc*, 702 F. App'x 416, 419 (6th Cir. 2017).   A facial attack on subject matter jurisdiction challenges the pleading's sufficiency, while a factual attack challenges the actual existence of jurisdiction.   *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759-60.   The party opposing dismissal bears the burden of proving subject matter jurisdiction.   *Id.* at 760.

### B.  Discussion

#### i.  District Defendants' Motion to Dismiss

The District Defendants assert that this Court lacks subject matter jurisdiction to hear any of Plaintiff's claims because (1) Plaintiff – as a *pro se* litigant – lacks standing to bring claims on behalf of her daughter, and (2) the complaint merely alludes to the federal statutes and constitutional provisions she claims are implicated without sufficient factual allegations to support these causes of action.   In the alternative, they assert that all claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

In evaluating these arguments, the Court notes that the complaint does contain language that indicates that Plaintiff is attempting to bring claims on behalf of herself, not her daughter. (*See e.g.,* Doc. No. 19 at PageID 214 ("I as her parent have been proximately violated[] and have suffered loss due to the disruption of my home, and the destruction of the course and path that my daughter and I, working together for several years had established for her . . ..").)   Further, the complaint identifies specific statutes and constitutional amendments that she claims are implicated in the fact section.   (*Id.* at PageID 236.)   Therefore, this Court, when possible,

construes Plaintiff's complaint as if she is attempting to bring the claims on behalf of herself and analyzes whether the claims satisfy the federal pleading standards.

In total, Plaintiff alleges that she is entitled to damages under ten unique causes of action.[1]  But plaintiff does not identify the specific District Defendants that are liable under each cause of action.  Because Plaintiff is a *pro se* litigant, the Court construes Plaintiff's complaint as if she is alleging that every named District Defendant is liable under each of cause of action. Even so, the Court finds that none are viable against any of the District Defendants and dismisses all claims brought against them.   For three of these claims, Plaintiff, as a parent, does not have standing to sue on behalf of herself.   And for the other seven, Plaintiff has failed to state a plausible basis for relief.   The claims are described below.

### 1. Title VI, Rehabilitation Act of 1973, and Family Educational Rights and Privacy Act Claims

Plaintiff lacks standing to bring claims under Title VI of the Civil Rights Act of 1964, the Rehabilitation Act of 1973 ("Rehab Act"), or the Family Educational Rights and Privacy Act ("FEPRA") on her own behalf.   She also cannot pursue these claims as a *pro se* litigant on her daughter's behalf.  *See eg., Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002). Accordingly, the Court lacks subject matter jurisdiction to hear these claims; therefore, the Court grants the District Defendants' motion to dismiss for these three claims.

To bring a claim under Title VI, the plaintiff must be the intended beneficiary of the federal spending program.  *Tinney v. City of Detroit*, 188 F.3d 509, 1999 WL 685921, at *7 (6th Cir. 1999); *Love v. Milan Special Sch. Dist*., No. 15-1234, 2016 WL 3703080, at *2 (W.D. Tenn.

---

[1] This total does not include Plaintiff's assertion that she is entitled to damages due to a "loss of joy," the "creat[ion] of a terroristic environment," and violations of "just about every other constitutional thing you [can] think of," as these are not legitimate causes of action.   (Doc. No. 19 at PageID 235-34.)

July 8, 2016).  "The intended beneficiaries of a federally funded public school program are school children, not their parents."  *Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1298 (S.D. Tex. 1996).

Parents do not have standing to sue public schools under the Rehabilitation Act of 1973 unless they show that the school personally discriminated against them because of their association with a disabled student.  *Burton v. Cleveland Heights-Univ. Heights City Sch. Dist. Bd. of Educ.*, No. 1:17 CV 134, 2017 WL 4348915, at *3 (N.D. Ohio Sept. 29, 2017); *R.S. v. Butler Cty., Pennsylvania*, No. 16–3194, 2017 WL 2787615, at *3 (3d Cir. June 27, 2017) (affirming dismissal of parents' Rehabilitation Act and ADA claims based on their son's disability because the complaint contained no factual allegations from which it could be inferred that the parents were personally subjected to discrimination because of their son's disability); *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1142 (11th Cir. 2014) (holding that a nondisabled person "has standing to bring suit under the ADA only if she was personally discriminated against or denied some benefit because of her association with a disabled person"). Here, Plaintiff has not met her of burden of establishing that (1) her daughter suffers from a disability covered by the Rehab Act, and (2) the District Defendants discriminated against her because of her daughter's disability.  *Cartwright*, 751 F.3d at 759 (describing the plaintiff's burden when the defendant raises a factual challenge to the court's subject matter jurisdiction).

Finally, the Supreme Court has made clear that private actors do not have standing to enforce FERPA.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002).

This Court lacks subject matter jurisdiction over these claims because Plaintiff lacks standing to bring these claims on behalf of herself and is barred from bringing them on behalf of her daughter.  Thus, the Court dismisses the Title VI, Rehab Act, and FERPA claims brought

against the District Defendants.

### 2.  Breach of Contract and Breach of Trust Claims

Plaintiff has not alleged any facts to support a breach of contract or trust cause of action against the District Defendants; therefore, these claims are dismissed.   Under Ohio law, to prevail on a breach of contract claim, the plaintiff must prove that the defendant breached a valid contract and that he was harmed as a result of the defendant's breach.   *Res. Title Agency, Inc. v. Morreale Real Est. Servs., Inc.*, 314 F. Supp. 2d 763, 769 (N.D. Ohio 2004).   Here, Plaintiff has not alleged any facts supporting her claim that she had a valid and enforceable contract with any of the District Defendants, let alone that they breached any legal obligation.   *See id.*   Similarly, to survive a motion to dismiss on her breach of trust claim, Plaintiff must provide facts in the complaint showing the existence of a valid trust.   *See Helton v. Fifth Third Bank*, 2019-Ohio-5208, 2019 WL 6894047, at *3 (Ohio Ct. App. December 18, 2019).   That she has not done.

### 3.  Denial of Free Appropriate Public Education

To bring a Denial of a Free Appropriate Public Education ("FAPE") claim, which is brought under the Individuals with Disabilities Education Act ("IDEA"), the plaintiff must first exhaust the IDEA's administrative remedies.   *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 754 (2017).   Here, Plaintiff has not exhausted any of the administrative remedies.   And, even if she had, this claim would fail because it is Plaintiff's daughter – not Plaintiff – who is allegedly being denied an adequate education.   Accordingly, Plaintiff's denial of a FAPE claim is dismissed.

### 4.  Fourteenth Amendment Due Process and Racial Discrimination Claims

Reading the complaint favorably to Plaintiff, it seems that Plaintiff asserts that her rights to due process and equal protection found in the Fourteenth Amendment were violated when the

school prohibited her from attending her daughter's band events.    Even if this Court ignores

Plaintiff's failure to bring these constitutional claims under § 1983 – which would further require

her to identify the specific District officials who decided to prohibit her from attending the

events – Plaintiff has not alleged plausible constitutional claims.   *Sanders v. Prentice-Hall*

*Corp.*, 178 F.3d 1296, 1999 WL 115517, at *1 (6th Cir. 1999) (noting that to collect damages

from state actors for their constitutional violations, the plaintiff must bring a claim under §

1983).    Plaintiff does not have a protected right to attend events on school property.   *Guy v. Bd.*

*of Educ. Rock Hill Loc. Sch. Dist.*, No. 1:18-CV-893, 2020 WL 2838508, at *4 (S.D. Ohio May

31, 2020) (collecting cases).    Because of this, courts routinely dismiss due process claims when

schools, like the District here, prohibit parents from entering school property after the parent

behaves inappropriately at a school event.    *See eg., Lovern v. Edwards*, 190 F.3d 648, 655 (4th

Cir. 1999) ("School officials have the authority to control students and school personnel on

school property, and also have the authority and responsibility for assuring that parents and third

parties conduct themselves appropriately while on school property.").

       Nor has Plaintiff sufficiently alleged that the decision to prohibit her from attending band

events was racially motivated.    To survive a motion to dismiss, Plaintiff was required to plead

facts that show that the specific decision-makers harbored racially-based animus towards her and

then intentionally discriminated against her because of their prejudice.    Conclusory allegations

of racism are insufficient.   *Pierce v. Dietz*, No. 4:13CV1956, 2013 WL 6276733, at *3 (N.D.

Ohio Dec. 4, 2013) (holding that "conclusory allegations of racism are insufficient" to state a

plausible constitutional racial discrimination claim); *see also Sheppard v. Kent State Univ.*, No.

5:15 CV 417, 2015 WL 4743893, at *3 (N.D. Ohio Aug. 11, 2015) (noting that allegations of

stray racially charged remarks are not enough to survive a motion to dismiss a constitutional

racial discrimination claim).   That is all that we have here.

To the extent that Plaintiff seeks to raise a racial discrimination claim beyond the prohibition from attending band events, her complaint still fails to state a plausible constitutional claim.   Throughout the complaint, Plaintiff asserts that a racist ideology permeates the District's schools and motivates all of the employees' conduct towards her, but she fails to identify a specific action or policy that constitutes racial discrimination against her or other minority parents.[2]   Plaintiff's general, conclusory allegations of racism are not sufficient to survive a motion to dismiss.   *Bryant v. McDonough*, No. 1:20-CV-00726, 2021 WL 5359182, at *9 (N.D. Ohio Nov. 17, 2021) (noting that the conclusory allegations of systemic racism in an institution need not be accepted as true when reviewing a 12(b)(6) motion and, therefore, cannot be the basis for a racial discrimination claim).

Plaintiff has failed to state a constitutional claim against the District Defendants.

### 5.  Intentional Infliction of Emotional Distress and Loss of Filial Consortium Claims

An intentional infliction of emotional distress claim requires plaintiffs to allege facts that show the defendant engaged in "extreme and outrageous conduct" that goes "beyond all possible bounds of decency and can be considered completely intolerable in a civilized community." *Marconi v. Savage*, 2013-Ohio-3805, 2013 WL 4774506, at *6 (Ohio Ct. App. 2013).   Here, Plaintiff's complaint does not allege that any of the named District Defendants engaged in

---

[2] The only specific, non-conclusory allegations of racism that Plaintiff provides in her complaint are the actions of non-District employees, such as students shopping for confederate clothing or parents making racist hand signals at sporting events.   (Doc. No. 19 at PageID 235.)   As offensive as these actions may be, they do not rise to the level of a violation of a **parent's** constitutional rights.   Even assuming these actions implicated Plaintiff's constitutional rights, the amended complaint does not sufficiently allege that the District Defendants either encouraged or knew about and chose to ignore the conduct.

conduct that could meet this significant threshold.   *See id.*

Under Ohio law, a loss of filial consortium claim is a derivative claim.   *Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St. 3d 244, 617 N.E.2d 1052, 1057 (Ohio 1993). Consequently, to properly plead this claim, Plaintiff's complaint must identify the primary claim that her loss of consortium claim derives from.   *McCarthy v. Lee*, 2022-Ohio-1413, 2022 WL 1258229, at *2 (Ohio Ct. App. April 28, 2022).   The closest the complaint comes to doing this is Plaintiff's description of her daughter being dropped at danceline practice.   But these allegations are too vague to properly provide the District Defendants with notice of the nature of the primary claim.   For example, the complaint does not specify whether any of the named District Defendants dropped Plaintiff's daughter or whether they were supervising Plaintiff's daughter when the drops occurred.   Nor does Plaintiff adequately describe how her daughter's injuries directly impacted her relationship with her daughter.

Thus, the Court dismisses the tort claims brought against the District Defendants.

### ii.  Ms. Beichner

None of the ten causes of action listed in Plaintiff's complaint are viable against Ms. Beichner.   Notably, Plaintiff only mentions Ms. Beichner in a single sentence, which alleges that Ms. Beichner engaged in "various intimidation tactics" directed at Plaintiff's daughter "such as having [Ms. Beichner's] daughter drive the [band] director's truck through car washes." (Doc. No. 19 at PageID 231.)   This sentence is too vague to provide Ms. Beichner with notice of the factual basis for any of Plaintiff's claims; nor does it establish that Ms. Beichner has a contractual or fiduciary relationship with Plaintiff.   To the extent that Plaintiff is attempting to bring a claim against Ms. Beichner for her daughter's conduct, Plaintiff has also failed to state a claim because, under Ohio law, a parent is not liable for their child's conduct unless the plaintiff

proves that the parent negligently entrusted their child, knew the plaintiff's injury was a probable consequence of their child's conduct, or ordered their child's wrongdoing. *See Huston v. Koneiczny*, 52 Ohio St. 3d 214, 556 N.E.2d 505, 509 (1990). There are simply no facts alleged in the complaint that support an inference that these exceptions could apply. *See id.* Even if an exception did apply and Ms. Beichner was liable for her daughter's conduct, Plaintiff has still failed to state a claim Ms. Beichner's daughter's alleged conduct was directed at Plaintiff's daughter, not Plaintiff. Again, as a *pro se* plaintiff, Plaintiff is barred from bringing claims on her daughter's behalf. *See eg., Shepherd*, 313 F.3d at 970. Finally, Plaintiff cannot assert constitutional claims against Ms. Beichner because she is a private citizen. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Accordingly, the Court finds that Plaintiff has failed to state any claim against Ms. Beichner and dismisses all claims brought against her.

### III. <u>Conclusion</u>

For the reasons stated above, this Court GRANTS the District Defendants' motion to dismiss and GRANTS Ms. Beichner's motion to dismiss. Accordingly, this case is dismissed *with prejudice*. The Court further DENIES all outstanding motions as moot. (Doc. Nos. 1 & 22.) The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**

Date: June 24, 2022

BRIDGET M. BRENNAN
UNITED STATES DISTRICT JUDGE